# Lineaweaver's Estate.

*Bailment—Personal property—Retention of possession after term—Hire and use—Wear and tear.*

1. A bailee of personal property is not liable under an implied contract for the hire and use of the same, if he is allowed to retain possession of such property by the bailor after the termination of the contract of bailment.

2. Where a contract of bailment of a printing press provided for payment of hire and for payment of a stipulated annual sum for wear and tear, proof that the subject of bailment was not used during the

bailee's possession thereof, and that payment of the annual sum for wear and tear the first two and one-half years of the bailment was waived by mutual consent, will preclude the bailor from claiming such annual sum for wear and tear during a period which covered the last half of the third year of the contract and a half year subsequent to the termination of the contract.

Argued Oct. 10, 1913. Appeal, No. 23, Oct. T., 1913, by Jacob Garrett, from decree of O. C. Phila. Co., July T., 1912, No. 249, dismissing exceptions to adjudication in Estate of Samuel T. Lineaweaver, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Affirmed.

Exceptions to adjudication.

LAMORELLE, J., filed the following opinion.

By writing dated May 1, 1907, Jacob Garrett agreed to "lease and hire" unto Samuel T. Lineaweaver a certain printing press for the term of three years, reserving for the "hire or use thereof" the sum of $112 per annum, and, in addition, the sum of $400 per annum for "wear and tear" or so much more as might be agreed upon, to be paid the first of May each year, Lineaweaver to pay the "unpaid hire" on the day and time it became due.   It was further agreed that if default was made in the payment of any of the installments or hire, the lessor should have the right "to sue therefor" or to take and repossess the printing press. The lessee was given the privilege of purchase during the three year term upon the payment of such sum as with the previous payments for "wear and tear" would amount to $1,400, and an allowance on the basis of eight per cent per annum was to be made on all installments on account of "wear and tear."

Lineaweaver died October 14, 1910, some five and a half months after the expiration of the term created by the written agreement.   The press was then in his possession and control, though it had never been in actual

use. His legal representative in due course notified Garrett that the press was held subject to his order.

Claim was made before the auditing judge for $512, one year's rent due November 1, 1910, $112, and $400 for "wear and tear," due May 1, 1910. The written agreement was offered in evidence, two receipts showing the payment of rent on this agreement "in full" to November 1, 1909, coupled with a waiver of the two payments of $400 for wear and tear, then past due, and an affidavit by a disinterested third party to the effect that the press had never been in actual use.

The auditing judge allowed six months' rent to May 1, 1909, and rejected the claim for "wear and tear," and the correctness of his ruling is before us on exceptions.

The contract is one of bailment: James H. Link Machinery Company v. Trust Company, 227 Pa. 37; Cincinnati Equipment Company v. Strang, 215 Pa. 475; Lippincott v. Scott, 198 Pa. 283; American Car & Foundry Company v. Railroad Company, 218 Pa. 519; Natl. Cash Register Company v. Shurber, 41 Pa. Superior Ct. 187; nor does the fact that there was no express stipulation for the return of the goods at the expiration of the term change its character: Stiles v. Seaton, 200 Pa. 114; Porter v. Duncan, 23 Pa. Superior Ct. 58.

Ordinarily the default of the bailee in paying the rent reserved terminates the bailment (Stiles v. Seaton, 200 Pa. 114), and such default indicates an intention to surrender possession. There is nothing in the present case to take it out of the ordinary rule; no testimony is offered showing an intention to renew, nor can we infer such purpose from the fact that the bailor did not forthwith repossess himself of the press. There was testimony, properly admitted and relevant, that the press had never been used. "Wear and tear" is defined by Webster as "the loss by wearing, as of machinery in use; the loss or injury to which anything is subjected by use, accident," etc. It is therefore but fair to presume,

as stated by the auditing judge, that when, on November 15, 1909, Garrett acknowledged the receipt of $112 by indorsement on the original agreement "as rental on this agreement in full to November 1, 1909," and added the significant clause "The four hundred dollars being waived by mutual consent," he considered the non-use of the press as the controlling element in refraining from holding the lessee liable. In fact, the receipt in full would preclude the collection of anything for "wear and tear" which became due prior to November 1, 1909, and as no action of any kind was taken by the bailor from and after the determination of the bailment on May 1, 1910, and as the press was not subject to deterioration because of wear and tear, a majority of the court are of the opinion that the auditing judge was clearly right in limiting the liability to the responsibility assumed by the lessee; that is, the punctual payment of the "unpaid hire" when and as it became due and payable. The parties themselves had established a course of dealing, and, in remitting the rental for "wear and tear" of an unused press, the bailor had defined the meaning of those words as understood by him and the bailee.

The exceptions are dismissed, and the adjudication confirmed absolutely.

*Errors assigned* were in dismissing exceptions to adjudication.

*William E. Caveny*, for appellant.—Where a tenant of real property holds over after the expiration of the term of his lease the landlord has the option of treating him as a trespasser or as a tenant under an implied renewal of the old lease: Diller v. Roberts, 13 S. & R. 60; Hemphill v. Flynn, 2 Pa. 144; Hollis v. Burns, 100 Pa. 206; Williams v. Ladew, 171 Pa. 369; Benje v. Creagh, 21 Alabama, 151; Chamberlain v. Pratt, 33 N. Y. 47; Chase v. Second Ave. R. R. Co., 97 N. Y. 384.

It has always been held that it was the duty of the

bailee to make return of the bailed property, not the duty of the bailor to recover it: Story on Bailments (9th ed.), 397; Harrington v. Snyder, 3 Barb. 380; Graves v. Moses, 13 Minn. 335.

*Owen J. Roberts*, for appellee, cited: Chamberlain v. Pratt, 33 N. Y. 47; Chase v. Second Ave. R. R. Co., 97 N. Y. 384.

OPINION BY HEAD, J., February 20, 1914:

This appeal comes from the decree of the orphans' court dismissing certain exceptions filed by the appellant to the adjudication of the decedent's estate in that court. By the terms of that adjudication a certain claim made by appellant against the estate of the decedent was denied. The opinion filed by the learned court below, after a hearing on the exceptions, seems to us to fully vindicate the decree which was entered. We cannot perceive that any substantial advantage would result from a restatement here of those reasons, or an attempt to further elaborate them. We therefore dismiss the assignments of error and affirm the decree of the learned court below.

Decree affirmed.